IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED

KEN DIVINEY, Parent and Next Friend,
of RYAN KENNETH DIVINEY and
BRIAN MATTHEW McLHINNEY,

OCT 2 4 2012

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

Plaintiffs,

v.

CIVIL ACTION NO. 1:11CV149

AUSTIN VANTREASE, JONATHAN MAY,
COLIN McKEEFERY, BRANDON GROUX,
TYLER HUSFELT and ALEXANDER WOODS,

Defendants.

## OPINION/ORDER DENYING MOTION TO COMPEL

### I. INTRODUCTION

On August 28, 2011, the Plaintiffs Ken Diviney, Parent and Next Friend of Ryan Diviney,

and Brian McLhinney, filed a complaint [DE 6] in Monongalia County Circuit Court demanding

compensation for Plaintiffs' injuries that were sustained during a physical altercation between Ryan

Diviney and the Defendants. The altercation occurred in Morgantown, West Virginia on November

7, 2009. See Compl. ¶ 6. The Plaintiffs allege that Defendants Vantrease and May caused the

Plaintiffs' severe injuries and Defendants McKeefery, Groux, Husfelt, and Woods encouraged the

physical altercation that resulted in Plaintiffs' severe injuries. See Compl. ¶ 8, 9.

### II. PROCEDURAL HISTORY

On September 22, 2011, Defendants removed the case to the United States District Court for

the Northern District of West Virginia. [DE 4]. On November 18, 2011, the parties proposed a

discovery plan. This was followed by a scheduling conference on January 13, 2012 where a trial was

set for July 13, 2013. [DE 57].

1

On September 10,  2012, Defendant Vantrease filed a "Motion for Order Compelling Disclosure of Discovery Responsive to Interrogatory Number 4 and Request for Production Number 4 of Defendant's Second Set of Combined Discovery to Plaintiff Ken Diviney" [DE 157].  Plaintiffs filed a Response to the Motion on September 21, 2012 [DE 165].  Defendant Vantrease filed a Reply on September 25, 2012 [DE 169].  This motion was referred by the District Court Judge to the undersigned on September 14, 2012. [DE 162].

## III.  FACTS

The following facts are undisputed.  Plaintiff Ken Diviney and others have engaged in fund raising to help pay for Ryan Diviney's medical costs and other expenses.  Such efforts include solicitation of donations through a website, "Ryan's Rally," and fund raising events such as road races and dinners.  Plaintiffs have received charitable contributions from a wide variety of individuals and organizations to help defray Ryan Diviney's medical costs and other expenses.

## IV. MOTION AND CONTENTIONS

Defendant Vantrease moves the Court to enter an order requiring Plaintiffs answer Interrogatory Number 4 and Request for Production Number 4 of Defendant Vantrease's Second Set of Combined Discovery.  Interrogatory No. 4 requests:

> [T]he names and addresses of all individuals, business organizations, charitable organizations, educational institutions, public or private agencies, or other persons or entities, with the exception of private health insurance companies insuring Ryan Diviney or his parents, who or which have contributed any funds and/or tangible items for the care and support of Ryan Diviney since November 7, 2009.

Request for Production No. 4 requests:

> [C]opies of any documents recording the dates and amounts of financial donations and/or tangible donations made by the persons or entities identified in response to interrogatory number 4, above.

Plaintiffs objected to both the interrogatory and the request for production on the ground that the information requested was irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Subsequent to the filing of the Motion to Compel Plaintiffs filed Supplemental Responses, objecting to Interrogatory No. 4 on the basis that the request was overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, but adding:

> However, to the best of the Plaintiff's knowledge and recollection, none of the potential witnesses identified by any of the parties have contributed any funds and/or tangible items for the care and support of Ryan Diviney since November 7, 2009. Should the Court find it appropriate, the Plaintiff suggests providing a list of contributors to the Court for an "in camera" review once the jury list is made available to determine whether any potential jurors have contributed any funds and/or tangible items for the care and support of Ryan Diviney since November 7, 2009.

Plaintiffs objected to Request for Production No. 4 on the basis the request was "overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence."

Defendant Vantrease first argues the information regarding the identities of persons or corporations who or which have donated funds or items for the care and support of Ryan Diviney is relevant and discoverable because it may prove or disprove bias on the part of a witness or juror. Defendant further argues that an exception to the "collateral source rule" may apply in this case to make evidence of charitable donations admissible at trial, and, therefore, within the scope of discovery.

Plaintiffs first argue the information requested in the Interrogatory and Request for Production is not relevant to any current issue and that Defendant has less burdensome means of

exploring witness and/or juror bias.  Plaintiffs further argue that the charitable funds and items

received by Plaintiffs are protected by the collateral source doctrine and as such are inadmissible.

## IV.  DISCUSSION

Plaintiffs's original response to both the interrogatory and the request for production was that

the information was irrelevant and not reasonably calculated to lead to the discovery of admissible

evidence.  Defendant argues:

> A person who has "invested" money or time and effort in Mr. Diviney's well-being,
> though his or her motives are admirable, is certain to carry some bias against anyone
> alleged to have harmed his well-being.  In fairness, such bias should be explored on
> cross-examination, if the person is a witness, or through voir dire, if he or she is a
> potential juror.  It will be very difficult, if not impossible, to do this, if the
> Defendants are in complete ignorance of the identity of such donors.

Federal Rule of Civil Procedure 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties
> may obtain discovery regarding any nonprivileged matter that is relevant to any
> party's claim or defense – including the existence, description , nature, custody,
> condition, and location of any documents or other tangible things and the identity and
> location of persons who know of any discoverable matter.  For good cause, the court
> may order discovery of any matter relevant to the subject matter involved in the
> action.  Relevant information need not be admissible at the trial if the discovery
> appears reasonable calculated to lead to the discovery of admissible evidence.

## A.  Witnesses

Subsequent to Defendant's filing of the Motion to Compel, Plaintiffs filed supplemental

responses, stating, in pertinent part, "to the best of the Plaintiff's knowledge and recollection, none

of the potential witnesses identified by any of the parties have contributed any funds and/or tangible

items for the care and support of Ryan Diviney since November 7, 2009."  The Court understands

Defendant's reluctance to accept this statement as it does not convey any certainty.  Plaintiffs

subsequently stated in their Response to the Motion to Compel:

> The Plaintiffs have responded to Interrogatory No. Four as follows, "[N]one of the potential witnesses identified by any of the parties have contributed any funds and/or tangible items for the care and support of Ryan Diviney since November 7, 2009."

The slight alteration has not gone unnoticed by the Court.  Nevertheless, the Plaintiffs' counsel has now represented to the defendants and the Court unequivocally  that no potential fact or expert witness  identified by any party has contributed any funds and/or tangible items for the care and support of Ryan Diviney since November 7, 2009.  As to witnesses, therefore, the Court finds Defendant's Motion to Compel is mooted by Plaintiffs' Response to the Motion to Compel.  Plaintiffs shall supplement this response should any new information, including as to any newly-identified fact or expert witnesses,  contradict their unequivocal statement. F.R.Civ.P. 26(e)(1)(A) and (B).

Regarding Defendant's argument that he does not know whether any witnesses "have helped to organize, or participated in, any of the private fund raising events conducts on his behalf," the Court finds Defendant did not request that information in the discovery at issue.

Defendant's Motion to Compel the information as to witnesses is therefore denied as moot.

## B.  Jurors

Defendant also argues that the information requested is "very relevant as it goes to the extent and nature of potential bias of potential jury members . . . ."  Defendant further argues:

> Although the Defendants may certainly inquire into such matters during voir dire, the Defendants would have no means to check the statements of potential jurors touching on such matters.

In a previous Order regarding the issue of Plaintiffs' web postings, the undersigned expressly found:

5

> The Defendants presently have an adequate remedy through voir dire to determine if any members of a jury panel or the jury panel as a whole have been impacted by any statements that may exist on the website. The Fourth Circuit has recognized this by its acknowledgment that "[a] careful and exhaustive voir dire process is crucial to ensure that these defendants will be tried by an impartial jury which will render its verdict on the basis of evidence adduced at trial rather than information from the newspapers or television."

In re Greensboro News Co., 727 F.2d 1320, 1325 (4th Cir. 1984). The Court finds the same is true of any bias indicated by contributions to Plaintiffs' causes.

Defendant argues:

> The parties can agree that a potential juror's knowing concealment of information about time he or she may have spent looking at the Plaintiff's website, or donations he or she may have made for Plaintiff's benefit is unlikely. However it is not unheard of. Sadly, real examples of jurors with "an axe to grind" sitting on juries through verdict are abundant. We generally find out about them on appeal.

Despite the assertion that such examples are "abundant," Defendant cites to no case in this jurisdiction requiring production of lists of donors to charitable organizations in regards to potential jurors. Moreover, Defendant offers no evidence, statistical or other, to support the assertion.

Defendants' argument regarding the likelihood that a juror "may simply have forgotten about a donation he or she made while surfing the internet, and happening upon the Plaintiff's website," is also not persuasive. It seems unlikely that an individual who cannot even remember donating to a cause would be so biased as to not be capable of action as an impartial juror.

For all the above reasons, the Court denies Defendant's Motion to compel as to jurors.

## C. The Collateral Source Rule

Plaintiffs did not object to the discovery at issue based on the collateral source rule. Defendant, however, raised the issue "anticipat[ing] that it may be raised in response to this motion." By doing so, Defendant in fact guaranteed Plaintiffs would argue their position regarding the issue.

6

When Plaintiffs did so, however, Defendant stated in his Reply:

> It should be noted, first, that Plaintiffs' assertion in his response to the Defendant's Motion, that he should not be required to produce information regarding charitable contributions because such evidence would be inadmissable at trial under the collateral source rule has been waived.  Plaintiff did not make an objection based on the collateral source rule in either his original or supplemental response to the interrogatory or request for production in issue.

Plaintiffs objected on the ground that the information requested was irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  If charitable donations are determined to be a collateral source, the information requested may very well be irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  The Court therefore finds Plaintiffs have not waived an objection based on the collateral source rule.

Because the collateral source rule is a rule of substantive law, the Court must look to West Virginia law to determine how to apply the rule to the present facts.  Sims v. Great American Life Ins. Co., 469 F.3d 870 (10th Cir. 2006);  Fitzgerald v. Expressway Sewerage Const., Inc., 177 F.3d 71 (1st Cir. 1999); Wolfe v. Gilmore Mfg. Co., 143 F.3d 112 (8th Cir. 1998); Town of East Troy, v. Soo Railroad Line Co, 653 F.2d 1123 (7th Cir. 1980); Mitchell v. Hayes, 72 F.Supp.2d 635 (W.D.Va. 1999).

As both parties acknowledge, the question of whether charitable contributions to a plaintiff are "collateral sources" that are inadmissible as evidence has not been addressed by the West Virginia Supreme Court of Appeals.  The West Virginia Supreme Court of Appeals has explained the collateral source rule as follows:

> Simply put, the collateral source rule excludes payments from other sources to plaintiffs from being used to reduce damage awards imposed upon culpable defendants.  The rule is premised on the theory that it is better for injured plaintiffs to receive the benefit of collateral sources in addition to actual damages than for defendants to be able to limit their liability for damages merely by the fortuitous

presence of these sources.

Alaska v. Michelin Tire Corp., 307 S.E.2d 603 (W. Va. 1983). In determining whether the collateral source rule applies, a court looks to not only the source of the income but also its character. Powell v. Wyoming Cablevision, Inc., 403 S.E.2d 717, 725 (W.Va. 1991).  Here the sources and character of the income at issue are the voluntary charitable donations of money and items from individuals and groups totally independent of Defendant, for the plaintiff's use.  The Court believes  the prior decisions of West Virginia Supreme Court of Appeals on the subject support a conclusion that such charitable donations are a collateral source, as evidenced in part  by the phrase "fortuitous presence of these sources," and the fact that the source is wholly independent of the defendant.  The Court therefore finds  that the charitable donation of money or items received by Plaintiff is a collateral source.

Defendant argues that, even if the charitable donations and items are determined to be a collateral source, they may still be admissible or at least discoverable.  Defendant cites to the West Virginia case, Brooks v. Galen, 649 S.E.2d 272 (W.Va. 2007), for the proposition that collateral source evidence may be admissible if the evidence is relevant for some purpose other than mitigation or reduction of damages.  The Brooks court noted the approach taken by the Arkansas courts as described in Montgomery Ward & Co., Inc. v. Anderson, 976 S.W.2d 382 (Ark. 1998) was "unique, yet ultimately practical."  The Arkansas approach delineated four limited exceptions to the collateral source rule:

> [A] collateral source of recovery may be introduced (1) to rebut the plaintiff's testimony that he or she was compelled by financial necessity to return to work prematurely or to forego additional medical care; (2) to show that the plaintiff had attributed his condition to some other cause, such as sickness; (3) to impeach the plaintiff's testimony that he or she had paid his medical expenses himself; [and] (4) to show that the plaintiff had actually continued to work instead of being out of work,

as claimed.

976 S.W.2d at 384-385.

The Court finds the statement by the West Virginia Supreme Court of Appeals regarding the Arkansas approach to the collateral source rule exceptions is dicta, unnecessary to the ultimate determination of the case. Even Defendant concedes the court only "at least discussed with approval" the Arkansas case. Brooks, however, did not even concern the collateral source rule. In fact, the plaintiff had withdrawn his objection based on the collateral source rule. The plaintiff was suing the hospital that inserted an IV in his arm, for injuries to his arm and hand. He had been awarded disability benefits by the Social Security Administration, but on the basis of a somatoform disorder, not his arm injury. The plaintiff argued that the Social Security decision was incorrect, although he had not appealed it. The trial court took judicial notice of, and permitted the jury to consider the Social Security Administration decision. The West Virginia Supreme Court of Appeals upheld that evidentiary decision, finding:

> The Appellant's attempt to attribute his condition to another cause in the Social Security hearing was the basis for the admission of the Social Security evidence. Under the unique circumstances of this case, we fail to discern any abuse of discretion by the lower court in taking judicial notice of the Social Security hearing findings. As addressed above, rulings on the admissibility of evidence are committed to the sound discretion of the trial court. In making its determination, this trial court was confronted with a plaintiff who had received a favorable, unappeased ruling from the Social Security Administration and subsequently claimed that the findings made in that forum were inaccurate. The findings of the Social Security Administration were relevant to the inquiries being addressed in the trial court. Particularly, the Appellees' theory of the case was that the Appellant suffered from an underlying illness that was not caused by the treatment he received at GVMC. The Social Security finding substantiated that theory. Moreover, not only did the appellant make no attempt to redact any portions of that document, he actually acquiesced in its admission. "A litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal."

(Emphasis added). The court itself concluded the case was one of "unique circumstances,"

9

indicating it would not be bound even by its conclusion in a case with such dissimilar circumstances as the one before this Court.  Significantly, the allowance of the evidence in <u>Brooks</u> did not include any amounts of money he may be receiving, whereas the only exceptions argued by the defendant in this case would.   The Court therefore does not find the <u>Brooks</u> court's discussion of <u>Anderson</u> precedential or persuasive in this case.  <u>See</u> <u>New England Mut. Life Ins. Co. v. Mitchell</u>, 118 F.2d 414 (4th Cir. 1941)("[T]his court . . . has never held itself bound by any part of an opinion, in any case, which was not needful to the ascertainment of the right or title in question between the parties.").  Even in diversity cases, federal courts are not bound by dicta from state court opinions. <u>Id.</u> at 419 ("[M]ere dicta have never been received as conclusive evidence of the law of any state, and clearly they ought not to be followed when opposed to what we regard as the sound and reasonable rule arising out of the common law of the state.")

Neither does <u>Anderson</u>, the case cited by the West Virginia court and Defendant, support the defendant's position.  In that case, the Arkansas court actually found the collateral source evidence, that being medical care provided gratuitously to the plaintiff, was <u>not</u> admissible.  <u>Anderson</u> in turn cites another Arkansas case, <u>Evans v. Wilson</u>, 650 S.W.2d 569 (Ark. 1983).  In <u>Evans</u> the plaintiff sustained a whiplash injury in a car accident.  He appealed the favorable jury verdict and award of $11,000.00, arguing the trial judge had violated the collateral source rule by permitting the defendant to show that the plaintiff had received specified disability payments from his employer and from insurance companies as a result of the injury.  On appeal, the defendant in the underlying case argued she was properly permitted to prove the plaintiff's disability income in support of her defense that asserted he was malingering.  The appeals court found the trial judge abused his discretion "in failing to hold that what slight probative value the testimony in question may have had was outweighed by

10

the prejudicial effect of proof that the plaintiff had received substantial income from outside sources." In other words, in neither Arkansas case was an exception actually found to be one of "the delineated four limited exceptions" it expressed to the collateral source rule.

In Ratlief v. Yokum, 280 S.E.2d 584 (W. Va. 1981), the West Virginia Supreme Court of Appeals stated:

> The plaintiff correctly states that the collateral source rule normally operates to preclude the offsetting of payments made by health and accident insurance companies or other collateral sources as against the damages claimed by the injured party.
>
> The collateral source rule was established to prevent the defendant from taking advantage of payments received by the plaintiff as a result of his own contractual arrangements entirely independent of the defendant. Part of the rationale for this rule is that the party at fault should not be able to minimize his damages by offsetting payments received by the injured party through his own independent arrangements . . . .
> Most courts that have adopted the collateral source rule also ordinarily prohibit inquiry as the whether the plaintiff has received payments from collateral sources. This prohibition is based upon the theory that the jury may well reduce the damages based on the amounts that the plaintiff has been shown to have received from collateral sources.

(Internal citations omitted). Defendant argues that Ratlief only concerns contractual arrangements made by injured parties, such as the purchase of insurance. The second paragraph quoted above may lead one to that conclusion. In fact, Ratlief concerned medical insurance payments. That paragraph explains the reason the rule was established and the rationale for the rule. The first and third paragraphs do not, however, restrict "collateral sources" to contracted sources. If they did, there would be no need for the phrase "or other collateral sources" in the first paragraph. The Court concludes that under the language of decisions of the West Virginia Supreme Court of Appeals, charitable donations are a collateral source and that evidence of such is inadmissible.

Even if the District Judge were to permit evidence during the trial of the amount of money

and items received by the plaintiff, the Court would still find the information requested in Interrogatory 4 and Request for Production 4 irrelevant and not likely to lead to the discovery of admissible evidence.  Even under any of the exceptions identified in <u>Anderson</u>, the identities and personal information regarding all individual and organizational donors is still irrelevant.  There is not a shred of evidence to suggest that any of the four (4) rationales applied in <u>Anderson</u> for admission are present in the instant case.

Defendant Austin Vantrease's "Motion for Order Compelling Disclosure of Discovery Responsive to Interrogatory Number 4 and Request for Production of Documents Number 4 of Defendant's Second Set of Combined Discovery to Plaintiff Ken Diviney" [Docket Entry 157] is **DENIED**.

The Court would normally require the defendant, whose motion was denied, to pay Plaintiff's reasonable expenses incurred in opposing the motion.  F.R.Civ.P 37(a)(5)(B).  In this case, however, part of the motion, regarding witnesses, was only denied as having been mooted by the plaintiff's supplemental response and response to the motion to compel.  These responses were therefore provided after the motion was filed.  F.R.Civ.P. 37(a)(5)(A).  The Court finds the motion, prior to the supplement and response, would have more likely been granted in part and denied in part, and in its discretion declines to order either party to pay the other's expenses.

It is so **ORDERED**.

The Clerk of the Court is directed to send copies of this Order to all counsel of record.

DATED: October 24, 2012

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE